## CITY OF STAMFORD *v.* MILIVOJE KOVAC ET AL.
### (10693)

O'CONNELL, LAVERY and HEIMAN, Js.

Argued June 8—decision released September 8, 1992

*Sigmund L. Miller,* with whom was *Joseph A. Maker,* for the appellants (named defendant et al.).

*James V. Minor,* assistant corporation counsel, with whom, on the brief, was *Daniel M. McCabe,* corporation counsel, for the appellee (plaintiff).

O'CONNELL, J. The defendants Milivoje Kovac and Sylvester Beserminje appeal from the trial court's order requiring them to perform substantial restorative acts on their property. They present two issues on appeal: "(1) Is the trial court's 'order granting preliminary injunction' dated April 1, 1991, a 'permanent' order, a final judgment, which is immediately appealable? (2) Does the trial court's order granting 'preliminary' injunction dated April 1, 1991, violate the due process clauses of the constitution[s] of the United States and state of Connecticut?" We reverse the order of the trial court.

The following facts are pertinent to this appeal. Kovac, acting as trustee for Gavra M. Kovac, his brother, purchased a lot on Long Ridge Road, Stamford, on November 5, 1988. On July 7 or 8, 1990, approximately 11,000 square feet of wetlands were filled with 800 cubic yards of fill. Testimony indicated that the fill caused siltation of a downstream pond and potential pollution of an underground aquifer and local wells.

The land was sold to Beserminje on July 16, 1990. Lida Nosik acted as Beserminje's attorney-in-fact at the real estate closing. On August 21, 1990, the plaintiff brought this action alleging that Kovac violated the Inland Wetlands and Watercourses Act, General Statutes § 22a-36 et seq., and seeking both temporary and permanent injunctions. Attached to the pleadings was a verification and certification statement alleging that unless a temporary injunction was granted to correct the illegal filling of the adjoining pond, there would be irreparable harm to the wetlands, pond and environment.[1]

---

[1] We recognize that the plaintiff was not required to prove irreparable harm and the lack of any adequate remedy at law when it alleges that a

Hearings regarding a temporary injunction[2] were held on September 10, 11 and 17, 1990. A temporary injunction issued on October 23, 1990, ordering removal of the fill was subsequently vacated because it was directed solely against Kovac despite the fact that Beserminje became the owner of the property on July 16, 1990. Neither Beserminje nor Nosik was a party at the time of the September hearings, but both were subsequently added as defendants on October 1, 1990.

Another hearing regarding the issuance of a temporary injunction was held on April 1, 1991. Beserminje was not present, although his attorney-in-fact, Nosik, was and testified as to the circumstances surrounding Beserminje's purchase of the property.

The trial court issued an "Order Granting Preliminary Injunction" dated April 1, 1991, against Beserminje and Kovac. It was not directed against Nosik. The order, which was essentially the same as the October 23, 1990 temporary injunction, required Kovac and Beserminje (1) to remove the fill on lot A-2 and return said property to its condition and grade on the 1987 site plan, (2) to replant native plants to stabilize the disturbed ground after the fill is removed, (3) to regrade the lot to the original contours, and (4) to replant the lot with native species of plants and shrubs in order to stabilize the ground and to prevent runoff. If the work was not done to the satisfaction of the plaintiff

---

statute has been violated. " '[T]he enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted.' " *Conservation Commission* v. *Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984).

[2] The parties use the terms "preliminary injunction" and "temporary injunction" interchangeably. This is incorrect. "Temporary injunction" is the term used in our state law; see General Statutes §§ 52-472 through 52-476; and "preliminary injunction" is the term used by the federal courts. See Fed. R. Civ. P. 65.

within forty-five days, Kovac and Beserminje would then pay a daily civil penalty of $250 to the plaintiff. The plaintiff was authorized to hire an independent contractor to comply with the order and the cost of the work would become a lien on the lot to be collected as a judgment.

It is undisputed that the matter came before the trial court on an order to show cause why a temporary injunction should not issue. Under appropriate circumstances,[3] the parties may agree that proceedings for a temporary injunction may be transformed into an action for a permanent injunction; *Ebenstein & Ebenstein, P.C.* v. *Smith Thibault Corporation,* 20 Conn. App. 23, 25–26, 563 A.2d 1044 (1989); but in the present case the plaintiff's offer to convert the temporary injunction hearing into a final hearing on the merits was refused. Moreover, the trial court limited the scope of the testimony to the issue of whether a temporary injunction should issue, expressly declining to consider matters properly reserved for a full trial on the merits. For example, the court refused to consider attorney's fees and fines because those were matters for the full trial and the trial court remarked that it was "picking this case up only on the question of temporary relief at the present time." Under these circumstances the court's authority was limited to the issuance of a temporary injunction, a limitation that the trial court recognized at least in part when it captioned its order as "Order Granting Preliminary Injunction." The defendants have not yet had a trial on the merits and they argue that they are entitled to their day in court on

---

[3] In order to transform a temporary injunction hearing into proceedings for a permanent injunction, the pleadings must be closed. *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 392, 488 A.2d 444 (1985); *Ebenstein & Ebenstein, P.C.* v. *Smith Thibault Corporation,* 20 Conn. App. 23, 26, 563 A.2d 1044 (1989).

the merits before they may be placed under the type of order issued at the conclusion of the show cause hearing. We agree.

As a threshold matter, we must determine whether the order, labeled as a temporary injunction, is appealable. The general rule is that an order granting a temporary injunction is an interlocutory order and, thus, not appealable because it is not a final judgment.[4] *Olcott v. Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941); C. Tait, Connecticut Appellate Procedure § 2.14 (c). Merely calling an order a temporary injunction, however, does not determine its appealability. Our function is to examine the trial court's order and determine whether, because of its form or content, it is in fact a permanent injunction and thus appealable. See *Doublewal Corporation v. Toffolon,* 195 Conn. 384, 389, 488 A.2d 444 (1985). For the reasons set forth, infra, we conclude that the order is a permanent injunction and thus appealable.

The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a full hearing on the merits. *Olcott v. Pendleton,* supra. Mandatory injunctive relief is not appropriate at the temporary stage of injunction proceedings. *Tyson v. Norton,* 390 F. Sup. 545, 550 (D. Conn. 1975). The trial court's order in the present case did not merely order Kovac and Beserminje to cease and desist from specific activity in order to preserve the status quo. To the contrary,

---

[4] Immediate review of temporary injunctions is authorized for appeals arising out of labor disputes; General Statutes § 31-118; *French v. Amalgamated Local Union 376,* 203 Conn. 624, 628 n.6, 526 A.2d 861 (1987); or for appeals involving matters of substantial public interest. General Statutes § 52-265a; *Laurel Park, Inc. v. Pac,* 194 Conn. 677, 678 n.1, 485 A.2d 1272 (1984). The defendants do not claim review of the present case under either of these exceptions.

they were mandated to perform substantial restorative acts by certain dates under threat of civil penalty if the acts were not completed.

Despite the caption on the order, it is readily apparent that the effect of the order was to grant the plaintiff essentially the same relief that it would receive if it prevailed after a final hearing on the merits. Calling a pig a swan will not make it one. The trial court's order is final in its nature and concept and consequently could be lawfully rendered only after a trial on the merits. "A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions." *Doublewal Corporation* v. *Toffolon,* supra, 393.

The plaintiff cites numerous federal cases for its claim that courts have authority to issue mandatory restorative orders in cases involving violation of environmental protection laws. Upon review of these cases, we find no authority which supports the use of a preliminary or temporary injunction to order mandatory restoration of wetlands subject to civil penalties for noncompliance. Although the federal courts have awarded mandatory restorative injunctions in several cases, in each case the injunction was a permanent final order. *United States* v. *Cumberland Farms of Connecticut, Inc.,* 647 F. Sup. 1166 (D. Mass. 1986), aff'd, 826 F.2d 1151 (1st Cir. 1987); *United States* v. *Ciampitti,* 615 F. Sup. 116 (D.N.J. 1984), aff'd, 772 F.2d 893 (3d Cir. 1985); *Parkview Corporation* v. *Department of Army Corps of Engineers,* 490 F. Sup. 1278 (E.D. Wis. 1980); *United States* v. *Weisman,* 489 F. Sup. 1331 (M.D. Fla. 1980); but see *United States* v. *Malibu Beach, Inc.,* 711 F. Sup. 1301 (D.N.J. 1989).

A review of our law likewise fails to support the use of a temporary injunction to require extensive restora-

tive measures. *Conservation Commission* v. *Price,* 193 Conn. 414, 419, 479 A.2d 187 (1984), relied upon by the plaintiff is inapposite. In *Price,* the commission sought and received a temporary injunction which enjoined the landowners from conducting regulated activity in a watercourse by forbidding them to repair an old dam and thereby create a pond on their property. The injunction did not require the defendants to undo the repairs they had already made; it maintained the dam's status until a full hearing on the merits could be held.

We conclude that the use of a temporary injunction in the case before us to mandate broad restorative goals is unsupported in law.[5] The form and content of the trial court's order demonstrate that it is a permanent injunction and, thus, the defendants were entitled to their day in court on the merits before such an order could lawfully issue.

Because our discussion on the first issue requires vacating the trial court's order we do not reach the second issue.

The order of the trial court is vacated and the case is remanded for further proceedings.

In this opinion the other judges concurred.

---

[5] In so holding, we do not imply that a temporary injunction could not require restorative measures in an emergency situation to protect the public health. That issue is not before us in this case because the record does not clearly indicate that such an emergency was present nor does the trial court find an emergency situation dangerous to the public health.