[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR TEMPORARY INJUNCTION
ISSUE
Should the plaintiff's motion for a temporary injunction be granted where the plaintiff, as the conservatrix of the Person and Estate of Argyll P. Rice, seeks to replace the defendant, as trustee of the Argyll P. Rice trust, with a successor trustee?
FACTS
On August 29, 1994, the plaintiff, Gerda Taranow, filed a two count complaint against the defendant, Shawmut Bank Connecticut, N.A. (Shawmut), alleging the following facts. CT Page 12279
On February 22, 1989, Argyll P. Rice and the Connecticut National Bank executed the Argyll P. Rice Trust Agreement (Rice Trust), naming herself as settlor and beneficiary and the Connecticut National Bank, its successors and assigns, as trustee. Shawmut acquired the interest of the Connecticut National Bank after the Rice Trust had been executed and, as successor to Connecticut National Bank, Shawmut has become the current trustee of the Rice trust.
On June 2, 1994, the probate court for the district of New London found that Rice was unable to manage her own affairs due to a mental disorder and therefore appointed the plaintiff conservatrix of the estate and person of Argyll P. Rice.
In June, 1994, the plaintiff sent an undated letter to Shawmut, a copy of which was attached to the complaint as Exhibit B, stating the following: "Please be advised that Shawmut Bank is to be removed as Trustee of the Argyll P. Rice Trust pursuant to the provisions of the Trust Agreement between Argyll P. Rice and Connecticut National Bank dated February 22, 1989. A Motion For Accounting by Trustee has been filed with the Probate Court for the District of New London, Connecticut. You will be advised as to the identity of the successor Trustee." Plaintiff's Complaint, Exhibit B. On June 17, 1994, the plaintiff sought approval in the probate court for the appointment of Union Trust Company (Union Trust), as the successor trustee of the Rice trust.[1] Shawmut then sent a letter to the plaintiff, dated June 29, 1994, that stated that Shawmut was treating its removal as trustee as a nullity.
Rice, who had been residing in a convalescent home in New London, experienced an overall improvement in her health and as a result of this the plaintiff desired to move Rice to a private residence. The plaintiff began preparations to purchase a condominium for Rice in New London but required funds from the Rice Trust in order to do so. At various times between July 22, 1994, and August 15, 1994 Shawmut agreed to purchase the condominium with assets from the Rice Trust but would later refuse to go through with the purchase. The plaintiff alleges that "[b]ecause of the need to complete the conveyance of the condominium by August 18, 1994, to accommodate the needs of the seller and Argyll P. Rice's CT Page 12280 relocation from the convalescent hospital to her new home, the plaintiff, Gerda Taranow, purchased the condominium with her own funds on August 18, 1994." Plaintiff's Complaint ¶ 25.
Count one of the plaintiff's complaint alleges a violation of General Statutes § 42-110 et seq., the Connecticut Unfair Trade Practices Act (CUTPA). Count two is a breach of contract claim based upon the allegation that Shawmut breached its contractual obligation to Rice by remaining in possession of the Rice Trust after being authorized to transfer it to Union Trust. In its prayer for relief the plaintiff seeks, in pertinent part, a temporary injunction against Shawmut.
The plaintiff, filed an application for a temporary injunction, with the complaint. The application requests that the court command and enjoin Shawmut to "wholly and absolutely desist and refrain from taking any action which interferes with the orderly transfer of the powers of the Trustee of the Argyll P. Rice Trust from itself to Union Trust Company until further order of the Court." On September 23, 1994, the plaintiff filed a memorandum in support of the plaintiff's application for a temporary injunction. On September 26, 1994 Shawmut filed a memorandum in opposition to the motion for a temporary injunction. On October 2, 1994, the plaintiff filed a supplemental memorandum in support of the application for a temporary injunction.
The court received a letter from the plaintiff, dated November 21, 1994, stating that the pleadings were closed and that the plaintiff desired that his application for a temporary injunction be considered by the court as a permanent injunction instead. There was no indication in the letter as to whether Shawmut consented to this change.
DISCUSSION
The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits. . . ." Griffin Hospitalv. Commission on Hospitals Health Care, 196 Conn. 451, 457,493 A.2d 229 (1985). "It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to CT Page 12281 be exercised with caution, never without the most satisfactory reasons. (Citations omitted; internal quotation marks omitted.) Anderson v. Latimer Point Management Corp. ,208 Conn. 256, 262, 545 A.2d 525 (1988). "Mandatory injunctive relief is not appropriate at the temporary stage of injunction proceedings." (Citations omitted.) Stamford v. Kovac,29 Conn. App. 105, 109, 612 A.2d 1229 (1992).
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Walton v. New Hartford, 223 Conn. 155, 165,612 A.2d 1153 (1992). In specifically addressing the standard for granting a temporary injunction, the court has stated that "it is the plaintiff's burden under Connecticut law to satisfy the court that: 1) They possess protectable interests which are at stake; 2) They will prevail after a hearing on the merits for a permanent injunction; 3) A denial of the temporary relief will cause them greater harm than will be suffered by the defendant . . . ; 4) They will suffer immediate, substantial and irreparable injury and lack an adequate remedy at law." Soderbloom v. Yale University,5 Conn. L. Rptr. 513 (February 3, 1992, Demayo, J.). The court has "repeatedly held that the issuance of an injunction rests in the sound discretion of the trial court." Anderson v.Latimer Point Management Corp. , supra, 208 Conn. 262.
The plaintiff in the instant case filed an application for a temporary injunction and now asks the court, after the pleadings have been closed, to treat the request for a temporary injunction as an application for a permanent injunction. If the pleadings are closed, the parties to a suit may transform a hearing for a temporary injunction into a hearing for a permanent injunction by mutual consent of the parties. Doublewal Corp. v. Toffolon, 195 Conn. 384, 392,488 A.2d 444 (1985). "Under appropriate circumstances, the parties may agree that proceedings for a temporary injunction may be transformed into an action for a permanent injunction. . . ." (Citations omitted.) Stamford v. Kovac, 29 Conn. App. 105,108, 612 A.2d 1229 (1992). However, there is no indication in the record that Shawmut consented to any change in the application from a temporary injunction to that of a permanent injunction. "A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions." Doublewal Corp. v. Toffolon, supra, 393. CT Page 12282 Therefore, the court will consider only the plaintiff's application for a temporary injunction.
The plaintiff is asking the court to enjoin Shawmut from "taking any action which interferes with the orderly transfer of powers of the Trustee of the Argyll P. Rice Trust from itself to Union Trust. . . ." Plaintiff's Proposed Temporary Injunction, ¶ 2. As has been stated above, the purpose of a temporary injunction is to "maintain the status quo until the rights of the parties can be determined after a full hearing on the merits. . . ." Griffin Hospital v. Commissionon Hospitals Health Care, supra 196 Conn. 457. At the present, the Rice Trust is in the possession of Shawmut who is contesting its removal as trustee. Shawmut is arguing that, by the terms of the Rice Trust, Shawmut is not authorized to transfer it until a successor trustee has been qualified. Shawmut claims that this qualification has to be done by the probate court and, to date, has not been done. Issuing the plaintiff's injunction would upset the status quo because it would force Shawmut to give up the Rice Trust which they currently possess. Additionally, since the proper trustee is in question in this case, by issuing the temporary injunction the court would be granting the plaintiff, at least in part, the same relief she would receive had she succeeded on a full hearing on the merits.[2] It is inappropriate, however, for the court to grant a temporary injunction where "it is readily apparent that the effect of a temporary injunction would be to grant the [party] essentially the same relief that it would receive if it prevailed after a final hearing on the merits."Connecticut Family Chiropractic v. Connecticut FamilyOrthopedics, Superior Court, judicial district of Danbury, Docket No. 311281 (April 19, 1993, McGrath J.), citing,Stamford v. Kovac, supra, 29 Conn. App. 110.
Further, the plaintiff has failed to present sufficient evidence to satisfy the court that she both suffered an irreparable harm and is without an adequate remedy at law. The plaintiff claims that she is suing to protect Rice's rights as reserved in the Rice Trust. The plaintiff also asserts that Shawmut is irreparably harming her and/or her ward because they are interfering with her duty as a conservatrix to manage the affairs of Rice. These claims are mere conclusions and the plaintiff has failed to present any evidence from which the court can find irreparable harm. CT Page 12283
In count one of the complaint, the plaintiff alleges that Rice has suffered an ascertainable economic loss. Plaintiff's Complaint ¶ 28. Other than the conclusory allegations of irreparable harm as stated above, the only allegations of harm are these "ascertainable economic loss[es]."[3] Any economic harm that resulted from Shawmut's alleged failure to follow the trust agreement would have an adequate remedy at law in the form of monetary damages. "Injunctions are not granted in cases where the plaintiff has an adequate remedy at law."Cahill v. Board of Education, 187 Conn. 94, 98, 444 A.2d 907
(1982).
"In deciding whether [an injunction] should be granted, or, if granted, whether it should be continued or dissolved, the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear that the plaintiff is without legal right." Olcott v. Pendleton, 128 Conn. 292, 295, 22 A.2d 633
(1941). "An injunction is an equitable remedy, and may be denied if the balance of the equities favors the defendant."Connecticut Light Power Co. v. Holson Co., 185 Conn. 436,444, 440 A.2d 935 (1981). The court finds that the balance of equities favors denying the injunction in that 1) the status quo will remain intact until a full hearing on the merits; 2) the plaintiff has not established sufficient irreparable harm; 3) any economic harm suffered as a result of keeping the trust with Shawmut until a full hearing can be remedied by monetary damages; 4) there has been no adequate showing that, in denying the temporary injunction, the plaintiff would suffer any greater harm than the defendant would if the injunction were issued; and 5) the plaintiff has failed to prove that she is reasonably likely to succeed at trial.
Accordingly, the plaintiff's application for a temporary injunction is hereby denied.
Hurley, J.