[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Margaret Reichenbach, applied on January 14, 1994, for the appointment of a receiver to wind up the affairs of a general partnership known as Southport Partners and for temporary injunctive relief against the defendants, Dale E. McIvor, Katherine Watts and Jeffrey Nixon. For the reasons stated herein, the application for a temporary receiver pendente lite is denied and temporary injunctive relief is granted in part.
By way of background, McIvor and Watts formed Southport Partners in 1986 as an investment banking and financial advisory partnership. The plaintiff joined the firm in 1988 as a general partner with a one-third interest. In 1993, defendant Nixon became a 5% partner and the percentage of ownership of the initial three partners was reduced accordingly. In July, 1993, the plaintiff voluntarily resigned as a general partner of Southport Partners, and sought dissolution of the partnership, a winding up of its affairs, and her share of the assets based on General Statutes §§ 34-69 and 34-75, the Uniform Partnership Act. The defendants did not wind up the partnership as demanded by the plaintiff and she then brought the present action against the defendants seeking the appointment of a receiver, a temporary injunction, an accounting, and monetary damages for breach of fiduciary duties and for violation of General Statutes § 42-110g, the Connecticut Unfair Trade Practices Act (CUTPA).
Upon review of the evidence, there is no question that the plaintiff is owed a substantial sum of money for her share of the partnership. A key issue to be resolved, however, is whether Southport Partners must be dissolved pursuant to the Uniform Partnership Act, § 34-39 et seq., or whether the partnership may be continued in accordance with a partnership agreement which so provides. The defendants acknowledge that the partnership agreement was never signed by the partners, but they contend that the parties lived by, and conformed to, this agreement throughout the life of the partnership. Accordingly, the defendants contend that the parties are bound by the terms of the partnership agreement, including the provision for the continuance of the partnership after the withdrawal of a partner. The evidence CT Page 12194 disclosed that on many occasions the parties did indeed act in accordance with the terms of the agreement, but of course the defendants are confronted with the fact that the agreement was never executed, and that the partners did not always follow the dictates of the agreement.
By way of additional background, Southport Partners is the sole general partner of a wholly-owned limited partnership known as Southport Partners, L. P., and McIvor is its only limited partner. This limited partnership is a registered broker-dealer and investment advisor, and is a member of the National Association of Securities Dealers, Inc. (NASD). Limited partnerships are governed in this state by General Statutes §§ 34-9 through 34-38q, the Uniform Limited Partnership Act (ULPA). See also General Statutes § 34-44(2).
By order of this court dated March 23, 1994, the dispute concerning the amount of money owed to the plaintiff was referred to arbitration by NASD, and the present action was stayed, pursuant to General Statutes § 52-409, pending the outcome of such arbitration. The issue of dissolution of the partnership and the applicability of the Uniform Partnership Act will presumably be decided by NASD or, if not, by this court after a full hearing. However, it was also ruled by this court, in accordance with General Statutes § 52-422, that the plaintiff was entitled to seek the appointment of a receiver and injunctive relief pendente lite.
The plaintiff contends that a receiver should be appointed in order to wind up the affairs of Southport Partners, and also to manage and control the partnership in the interim, in order to insure that when her rightful share of the partnership is finally determined, there will be sufficient assets from which the plaintiff will be able to receive her award. In her complaint, the plaintiff alleged that the defendants were "concealing and/or destroying" various documents that would enable her to determine her proper share of the partnership's assets. The plaintiff also alleges the defendants were negotiating with Chase Manhattan Bank over a "significant" receivable primarily due to the plaintiff's account and were breaching their "fiduciary duties" to the plaintiff by carrying on that negotiation.
The plaintiff also claims that the defendants have refused to provide her with adequate financial information and supporting documentation in order to ascertain her rightful share of the CT Page 12195 partnership. The plaintiff further contends that the information that she did receive from the defendants was inaccurate in that certain invoices sent to clients of Southport Partners contained higher amounts of money than had been reported to the plaintiff. Plaintiff also claims that the defendants manipulated the bad debt reserve account in an attempt to reduce her share of the partnership income and assets. It was further contended that the defendants shifted assets belonging to Southport Partners to the limited partnership in order to insulate these funds from the plaintiff. It was also claimed that a bonus paid to the defendant Nixon, and the plan to pay the other defendants a substantial bonus, would dissipate the assets of Southport Partners.
A receiver may be appointed pursuant to General Statutes § 52-509 and Practice Book § 485 to manage a partnership's affairs in the event that a partnership is dissolved and the partners cannot agree on a disposition of the assets. The appointment of a receiver at this time would, in practical effect, be a decision of this court, during the pendente lite, stage that Southport Partners must be dissolved pursuant to the Uniform Partnership Act, whereas the defendants contend that the partnership is still in existence pursuant to the partnership agreement, albeit an unsigned one.
The other ground for appointing a receiver at this time would be if the plaintiff had proved that the partnership was wasting assets and a receiver was necessary to preserve the status quo and prevent the dissipation of the assets. As noted in Krall v.Krall, 141 Conn. 325, 333, 106 A.2d 165 (1954), "[t]he appointment of a receiver for a going, solvent concern is strong medicine and must be administered with caution." The Appellate Court in referring to such an appointment in a corporate setting in Horton v. Hydra Systems International, Inc.,16 Conn. App. 420, 547 A.2d 926 (1988), stated that "[t]he determinative inquiry is whether, considering all the circumstances, the affairs of the corporation should continue to be managed and wound up by those in control of it or, instead, it appears that those in control are so using their power that the property of the corporation should be taken over and administered under the direction of the court." (Internal quotation marks omitted). Id., 431. "A receivership is a drastic remedy. It takes control of the property from the defendant owner and vests it in an outsider who is likely not to manage it as efficiently and economically as the owner." New Conn. Bank v. 20 Sisson Street, 5 Conn. L. Rptr. 531, 532 (1992). CT Page 12196
The evidence, however, discloses that at this time the defendants are not wasting or dissipating the assets of Southport Partners, but to the contrary, the defendants appear to be managing the partnership in a reasonably sound manner. Thus, the appointment of a receiver for Southport Partners and/or for Southport Partners, L. P. at this time is contraindicated either as a preliminary to a winding up of the partnership's affairs, or in order to prevent waste and mismanagement.
Temporary injunctive relief may be awarded, pursuant to General Statutes § 52-471, "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospital v. Commission on Hospitals Health Care, 196 Conn. 451, 457, 493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. According to Berin v. Olson, 183 Conn. 337, 340,439 A.2d 357 (1981): "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.)
The dissent in an Appellate Court decision summarized the criteria for the issuance of a temporary injunction as follows: "the plaintiff must establish that protectable interests are at stake, that it will prevail, to a reasonable certainty, subsequent to a final hearing on its application for permanent injunction, and also irreparable injury and lack of an adequate remedy at law. . . . The principal purpose of such an injunction is to preserve the status quo until the rights of the parties can be finally determined after hearing on the merits. . . . In deciding whether it should be granted . . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny . . . it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting . . . it, unless indeed, it is very clear that the plaintiff is without legal right. . . . The court must consider the probable outcome of the litigation, and whether an irreparable loss will result unless the status quo is preserved." (Internal quotation marks and citations omitted.) Rhode Island Hospital Trust National Bankv. Trust, 25 Conn. App. 28, 39-40, 592 A.2d 417 (1991). CT Page 12197
The plaintiff seeks such relief in order to preserve her rightful share of the partnership assets. Her application for temporary injunctive relief is granted because "[t]he office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. . . . The status quo, for these purposes, has been defined as the last, actual, peaceable, noncontested condition which preceded the pending controversy." (citations and internal quotation marks omitted.)Stamford v. Kovac, 228 Conn. 95, 101-02, 634 A.2d 897 (1993). A temporary injunction is warranted in order to preserve sufficient assets to pay any award ordered by NASD and/or this court to the plaintiff. The granting of a temporary injunction is specifically authorized by General Statutes § 52-422, which provides, in pertinent part, that while an arbitration is pending a court may make "such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed."
Temporary injunctive relief is granted in that the individual defendants, as well as the two partnerships which they control, are ordered and directed to either (1) establish forthwith an escrow bank account bearing interest in a bank with an office in this state in the amount of $600,000, with Attorneys Friedman and Steinmetz as co-trustees, with payments from said account to be made only upon signatures of both trustees; or (2) if this is not feasible, then the defendants are enjoined from making any expenditure not in the regular course of business, including, without limiting the generality of the foregoing, the payment of any bonuses or distribution of profits to themselves or to any partner. In either event, the defendants are prohibited from destroying any records of the two partnerships, or from removing from the partnership premises any documents relating to the partnerships. The defendants are further directed to return to said offices any such document that may heretofore have been removed, and to permit the plaintiff, and/or her counsel, to enter upon the premises during business hours and upon reasonable notice in order to inspect any such documents, all pending further order of this court. A bond is not required. General Statute § 52-472.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of December, 1994
William B. Lewis, Judge CT Page 12198